Okay, our last case this morning is Vollintine Construction v. Illinois Capital Development Board, that's case number 4-130824. For the appellant, we have Carl Draper and for the appellee, John Schmidt. Mr. Draper, please proceed. Thank you. Good morning, your honors. May it please the court and counsel, my name is Carl Draper. I'm here on behalf of R.L. Vollintine, also known as Vollintine Construction in this case, seeking review of the decision of the circuit court, finding under an argument, euphemistically called sovereign immunity, that the circuit court did not have jurisdiction to enforce the Prompt Payment Act in an action filed under the common law writ of mandamus. The question before this court today that will be answered in the court's opinion is whether or not a contractor doing business with a state agency may seek judicial enforcement of the very laws that were enacted to protect the businesses who enter into such contracts. In other words, is the Prompt Payment Act enforceable at all or as the outcome of the state's argument, is it simply not enforceable? The answer is crucial to businesses who rely on enforcement of laws governing the procurement by the state of goods and services and is vital for an appropriate reversal of the circuit court's decision. Unless this court reverses the circuit court on this question of jurisdiction, the Prompt Payment Act will cease to be an enforceable statutory mandate and will become nothing more than a license for state officials to comply if they so choose without remedy. Isn't there a remedy? There is not a remedy, your honor. Isn't there a remedy, a statutory provision concerning an interest that the state is going to have to pay if it's late? This case is not about interest. That's not my question. I'm trying to get to it. Okay. I know you're asking, does the Court of Claims have jurisdiction to entertain that? And the Court of Claims does indeed make determinations on how much interest is due. But the fundamental problem is until the vouchers get submitted to the comptroller for payment, there is nothing for the Court of Claims to act on and there is nothing that Volentine can do to secure its rights under the Prompt Payment Act. Does the Court of Claims order that the voucher be submitted? It cannot. In fact, we cited to the Court in our brief the, I think it's Grimaldi decision, the Court of Claims has no powers for injunctive relief or mandamus. They cannot compel C&B to submit the voucher. I thought the case also said the Court of Claims does have that power, just that they have not ever used it. Is that inaccurate? I think that's not historically accurate with the various decisions both of the Court of Claims. There is tension with the Court of Claims constantly denying that it has any power to issue declaratory rulings, to issue mandamus relief, or to issue any kind of injunction. So if I follow your argument, if you're right and the Court of Claims cannot require the state agency to submit the voucher, if I follow your argument, then you have no remedy and any state agency could just say, well, we're not going to submit the voucher and there's not a darn thing you can do about it. That's exactly the position that Valentine finds itself in before the Court because now, more than three years following, the state acknowledging that the project was completed in conformity with the contract. The state has used the building and absolutely refused to pay for it. The state has refused to or decided it cannot pursue any remedy for what it claims is the real issue in this, which is an independent, not a contractual, an independent tort claiming some kind of property damage that may or may not have even happened. I want to go back to the question I raised. You never answered it, Mr. Draper. If a state fails to make a payment, as in a case like this, in the absence of the State Prompt Payment Act, what interest is the state required to pay? Well, the state is required under the Prompt Payment Act to make payment of interest, and the triggering point for that is when a proper bill was submitted and should have been acted on. So payment of interest should be accruing for these last three years. If there's no Prompt Payment Act, and before the Prompt Payment Act was in existence, what interest was the state required to pay on overdue bills? Before the Prompt Payment Act? Yes. The state was not required to pay interest that I'm aware of. No. But the fundamental question here is to… So… I'm sorry. I'm cutting off your next question. Yes, my question is, doesn't the State Prompt Payment Act require the state to pay interest on its overdue bills? It requires that. But, Your Honor, the fundamental problem first is it has to be compelled to begin a payment process, which the present fact pattern shows it has absolutely, recalcitrantly, refused to do for three years, and it has refused to pursue any alleged defense that it has, and it claims that the circuit court simply does not have the power to enforce that act. Is that based on the Certificate of Substantial Completion? The Certificate of Substantial Completion certainly shows that the defendants accepted all of the work, and let's read from it. It's in your appendix of A21. As the transmittal letter on A22, the actual document, it says the substantial completion date is August 15. It has boxes to say whether the work is complete or partial. It's checked that the work is complete. It says that the parties signing it have accepted the work based on the architect's certification and have assumed position and responsibility. They have terminated the contractor's obligation to maintain utilities or even to insure the premises any further beyond that, and the only obligation remaining are 13 punch list items due on August 15, 2011, and it was thereafter in December 2011 that the remaining signatures were issued because the punch list was, in fact, finished as we pled in the complaint. So that is back before the court. So the certificate abandoned any claims they might have for damage otherwise caused by the construction? The Prop Payment Act doesn't say that that's the case. Mr. Draper, I try to ask my questions in a certain fashion, and it would be helpful to me if you'd respond to the question I ask. I'm going to be giving you a direct answer, but it's two parts. Give me the answer first and then explain the answer afterwards. The notice of substantial completion accepts all of the work as appropriate under the contract. I do believe that that's an abandonment of any other defense or claim that the CDB may have. So the certificate of substantial? I'm not claiming that the Prop Payment Act makes that provision. The certificate of substantial completion abandons any claims by issuing that that the state might have for damage otherwise caused by your client during this construction? Well, there are contractual provisions. Is that a yes, Mr. Draper? It can't be answered that way for this reason because there are some competing provisions in the arrangement. The contract has its own independent process for dealing with damage claims that are independent of compliance with the construction project requirements. So if I understand correctly, the state must pay you, your client, all the money owed and then have to, if they have a claim for damage otherwise caused in the construction, seek that in some other fashion? That's correct because the construction contract expressly provides that CDB waives any claim for damage other than as insured. CDB and the construction contracts determine the amount of liability insurance, $500,000 per occurrence, a million for the entire project in this case. As the pleading shows, CDB accepted that insurance. It's available and CDB's sole remedy under the contract is to pursue a claim for which there is a policy of insurance to guarantee that the state has a remedy that, in fact, will be satisfied if they're correct. The state has abandoned that entirely throughout the process. For what it's worth, in the bottom of page 18 of your brief appears a reference to the NOILA versus Board of Education of the City of Chicago and includes some italicized quotes purporting to be from that case. I checked the case. I could not find this quote, and the reason is because it's from the west headnote, headnote number four from that case. It doesn't appear in the case at all. My apologies to the court. I didn't check that site carefully then. Okay. Go ahead. Counsel, it's my understanding that a claim was made with the insurance company regarding this leak and the damage that happened, and that was denied. Is that correct? There was a demand letter sent by the CDB in January or February 2011 while the project was ongoing, and Pekin Insurance did not deny that it had responsibility as the insurer but didn't have, as insurers typically do, without presentation of any proof, did not agree that there was any liability. So the requirement of the construction contract is that you have insurance so that if a claim is made, satisfaction of any judgment will be guaranteed, and that's still true in this case. What the CDB did was it refused to act on that, and then it was a full 12 months after issuing that that it issued the notice of substantial completion with no reference to anything that it claimed was improper, incomplete, and a fair reading of that is the CDB abandoned its claim for the property damage at that point. Now when you say denied, I'm talking about the fact that they determined that they did not agree with the representation that had been made about who caused this damage. Is that right? The insurance company? That's correct. They intended to fully defend it. They denied that Voluntine was shown to be responsible for the damage. And so what we have here is a fair allegation by CDB that Voluntine or Voluntine's workers caused damage that hasn't been paid for and no further action. Eight months later in August, they began signing the notice of substantial completion and turned it in. When the final invoices were submitted by January 2012, the Prompt Payment Act required notice of any defects in the invoices to be clearly identified. The joint rules that were adopted required specific detail about what is wrong with the invoice, what's wrong with the construction work that was done. As a requirement, when that 30-day window closed, the state had given up any right to claim that it didn't owe the payment under the Prompt Payment Act. We in no way have tried to preclude CDB from pursuing a negligence claim. If it thinks it has one, we quite seriously doubt, just as Pekin Insurance did, that any such claim has any validity. So on the basis of a completely unsubstantiated claim to Voluntine, you or one of your workers damaged the project, damaged the water line in the Capitol building. We simply refuse to pay you. And when you try to compel compliance under the Prompt Payment Act, we throw up the defense of sovereign immunity as a blanket defense to having no responsibility either to comply with that or to bring its own suit knowing that there's an insurance policy that will pay for it if it's due. So it completely renders meaningless the entire process of having to submit the work for approval, to obtain a certificate of substantial completion, or to take the steps to provide a proper bill under the Prompt Payment Act. So what has happened in short is that the state took control of the building three years ago, now refuses to pay, and now argues that we're without a remedy under the law before the circuit court. Is there such a thing as a certificate of final completion? There is one, and it comes with payment, the final payment. It comes and coincides at that time. And since they're not making the final payment, I assume, they have never explained themselves. They simply haven't issued it. What's the difference between issuing the one certificate at issue here and the certificate of final completion? The difference would be things like the punch list that are identified here as needing to be completed and to make sure all of the other... Was that punch list, by the way, ever presented to anybody? Does it appear in this record? I don't believe it appears in the record. Before the court, as we've alleged, there were only 13 punch list items. They were completed. That's what's pled in the complaint, and that's what we would prove to the circuit court. Do we know what they were? I don't know what they were. Is it significant? The punch list items? I mean, these are always the very minor defects or things that are just not completed that need to be wrapped up. But we do know CDB identified the deadline for that was August 15, or was it October 15? In any event, then the final signatures on that came in December without raising the issue, and they've not been raised to this day. Let's assume that, in fact, the employee of your client caused this damage, a lot of money, water damage and all that. So I want to make sure I understand. It's your position that the state under this contract would have to pay you because the certificate of substantial completion means you, your client, did what he's supposed to do as far as the structural work. And as far as any ancillary unintended damage from, let's say, a negligent worker, they have to then, in some fashion, in a separate action seek redress for that? That's what the contract that CDB drafted says must happen. It says CDB waives any right to claim damages for these kinds of ancillary torts to the extent of there being a valid insurance policy in place that would cover it, which exists in this case. And so CDB decided, and this is not uncommon in construction, to do that very thing because if there's a liability issue, in fact, that is why businesses buy insurance, Pekin Insurance would be ultimately liable to make the indemnification on that claim. It wouldn't come out of the contract money. Now, does it make a difference in this case that there is correspondence from Pekin saying we ain't paying? The only difference that makes is that, no, that makes no difference because that's nothing other than a denial of liability, which is not uncommon. It's not to be unexpected. The contract doesn't say you have to provide an insurance policy that guarantees payment without proof of liability, and it would be nonsensical to have a contract that requires such a thing. Instead, it requires that you have the policy. And there's a second remedy. The comptroller's office has an offset procedure. So, indeed, there is a way to, a lawful way to offset. I don't know what that means when you say an offset procedure. And here's how the offset procedure works. Anytime the comptroller has an obligation to pay to someone, if there is a competing obligation by that recipient, that payee, to the state, the comptroller has a process to offset those obligations. Routinely, the comptroller collects, intercepts from income tax refunds to taxpayers payments that are owed back to the state by the taxpayer. The process for that, however, requires that the obligation that the state is claiming first be established through a hearing process or a judgment. So there are two ways for CDB to collect, including an offset. But the offset still required them to first establish that the obligation was valid. And as we stand here today, CDB has done nothing to do that. One way was the offset with the comptroller. What was the other way? A suit? A suit, which would be defended by Pekin Insurance. Well, what's the state's problem with that? I have no idea. Okay. We'll ask the attorney. We have, it's not on the record, but we have asked them to do whatever they need to do to pursue their claim. That hasn't happened in three years. Has the Prompt Payment Act ever been used in the fashion that you're asking it to be used in this case? I haven't found a case where the state had this kind of fact pattern where it accepted goods or services and simply refused to pay. So I haven't been able to find something either in our own circuit court or in the appellate decisions that matches the situation. That's a no? That's a no. Okay. And I'm sorry, I was taught to try and answer questions with a complete sentence when I was young. Perhaps it disturbs me at this point. The problem here is that sovereign immunity is being used by the state to avoid the consequences of its own failure to comply with the law, either to comply with the Prompt Payment Act, to comply with the Comptroller's Act that would allow an offset, or to comply with the available remedy that it could file suit and prove that there is damage that's caused by Valentine as opposed to some other cause. So the state simply has taken $500,000 worth of construction from Valentine and refused to pay, and it has never ponied up evidence that Valentine is responsible for this water damage. Let me ask you another question about this. If this were some other owner, let's assume it was the hotel, big project, and half a million dollars worth of work contracted for. And the hotel claimed, the Lincoln Hotel in downtown, or the Hilton Hotel, claimed, you know, your clients, the construction company, did this job, but they caused this damage. Is it the normal practice in construction litigation that you'd say, well, you know, pay up. We did the job for you, and if you have some claim that we have negligently damaged otherwise, like causing this flooding, you're going to have to sue us. When there's a construction contract clause like one here that waives the property damage claims by first imposing an obligation to have a liability insurance policy that's acceptable, yes, that's exactly the process. So the Hilton Hotel would have to sue? The Hilton Hotel would be here with the same exact issue. We wouldn't have to prompt payment act, but we'd be in circuit court with the right to file suit in circuit court for breach of contract. If the Hilton Hotel wanted to bring its negligence claim, that would be a separate count. In the end, there may be two judgments. The offset only happens in the end because the property damage, unless it's specified in the contract, isn't a defense to the contractual obligation. Especially not here because that was waived in the contract. All right, Mr. Draper. You will have rebuttal. Thank you. You are welcome. Mr. Schmidt. Thank you, Your Honors. I'm John Schmidt on behalf of the Capital Development Board and the other defendants, I believe, and we ask for affirmance of the circuit court's decision, both on the ground that the circuit court used, which was sovereign immunity, and also because of failure to state a claim for mandamus. The remedy here is simple. File an action against the state in the court of claims, and then you can get the actual money, not just if the state is wrong, not just an order to transmit the voucher to the comptroller. Well, does the court of claims then have the authority to order the voucher be submitted to the comptroller? Because if not, that's no remedy at all. They can't get paid if the voucher isn't submitted. Well, in effect, by ordering payment, that's what the court of claims would be doing. They would be, they're saying, pay them. But doesn't the court of claims say they can't make such an order? Because they can't compel an official to do anything? Because they'd only have those kinds of powers. The court of claims does say that, Your Honors, right, that some. . . Well, then how do they get paid? I mean, I don't understand. They have a judgment. They have a judgment from the court of claims. An infallible judgment, I guess. No, that's. . . Are the court of claims judgments paid? Yes, they do get paid. Are they reviewable? They are not reviewable on the merits. They are reviewable only if there's a due process. But it's essentially, it's a judgment that then goes to the legislature to pay, assuming the legislature will do so? Yes, that's right, Your Honor. That's right. And what's our historical track record with this legislature? Are they paid? The judgments are paid. There have been, in the distant past, there have been one or two instances where they have not been paid. But of late, yes, they have. Well, I suppose to ask Justice Turner's question in this light, assuming that the construction company of Allentown here went to the court of claims and got a judgment of X dollars, is there any reason to think that, based on past experience, that judgment of the court of claims would not be paid? There's no reason to think that it would be paid. Well, my question goes to how do I know what the judgment of the court of claims is going to be? But I do know it's not reviewable. That's correct. It's not reviewable, but that's what the legislature has chosen to do for a breach of contract. What if here there was no allegation of water damages? What position would they be in to get paid, other than asking the court to order the voucher be submitted to the comptroller? Well, that would be a classic breach of contract action, and the legislature has determined breach of contract actions go to the court of claims. And in terms of Your Honor's question, the Prompt Payment Act doesn't have provisions that say, under these circumstances, the voucher must be submitted. That's not what the Prompt Payment Act addresses. It does not have anything that says, okay, if the work is completed, you must submit this voucher. State officials do have discretion in situations like this to make judgments about whether contract provisions have been complied with. If those judgments are wrong, the remedy is to go to the court of claims with a breach of contract action. You heard Mr. Draper's argument about the waiver of the insurance business or the damage. I'm not sure what that was. It sounded like it was a claim that in the contract, that if there was damage that was incidental, that, you know, you're giving that up. What about that? No. We haven't given that up. There is a contract provision saying there is a waiver of damages to the extent they are covered. But here the insurance company is refusing to pay. There is also a contract provision that says that Valentin is liable for damage to the premises. Under their interpretation, that provision becomes absolutely meaningless because the state, even if the insurance company denies coverage, the state cannot hold Valentin liable. It could never hold Valentin liable. You could go to circuit court, I guess, but the idea is, according to Mr. Draper, there is no offset permitted. That would be correct, Your Honor. The CDB can't withhold payment on an offset based upon the claim of the damage that they caused. That seems to be his position. That is his position. And why isn't he right in it? That's what I want to ask you directly. Because one reason is that the contract itself says that we, that the state can withhold payments if it determines that the contract requirements have not been met. And the contract requirement that would not have been met here is, if you damage the premises, you're liable, and they have not paid for that. So it is your position that there is a contract dispute based upon the damage that occurred, and the contract disputes can only be resolved in the court of claims? Yes, that would be our position, Your Honor. Okay. Now, I asked Mr. Draper if the Prompt Payment Act has ever been used in a similar fashion as a basis for a mandamus. I think his answer was no. Is that the answer? Yes, I have done nothing to indicate that it has ever been used in this fashion. And, again, the Prompt Payment Act and its regulations, even if we didn't argue sovereign immunity, this does not state a mandamus claim. The Prompt Payment Act, its remedy for situations like this is additional interest if the state ultimately accepts a bill but pays more than 60 days after the bill is received. So your position is, if I understand it correctly, the Prompt Payment Act is hortatory language to the state. You should pay up. And if you don't, here are the consequences. We're going to assess an interest penalty. That's correct, Your Honor. I would think there would be one possibility for mandamus under the Prompt Payment Act because it does, the act and the regulations do say that the state is supposed to decide whether a bill is a proper bill within 30 days. I would think, based on that, that if the state didn't do that within 30 days, there could be a mandamus from a vendor saying, you've got to tell us whether this is a proper bill or not. It seems to me, when was the Prompt Payment Act enacted? Do you recall? I'm sorry, I don't, Your Honor. But it's fairly recent. It seems to me that, in part, it was because the state was a deadbeat just not paying to its vendors money zoned, and this was some sort of provision to try to either address that with hortatory language, you should pay up, says the legislature, of course. The other one is quite a new problem. Or we're going to provide a statutory interest rate on late payments. Yes, that's right. And I think the problem they are trying to address is vouchers would get sent to the comptroller and the state was in financial trouble, so the vouchers would sit there month after month and not get paid. Let me ask you about this term that is a big part of the argument of the appellant, the Certificate of Substantial Completion, and this punch list that apparently isn't in the record. Is that right? Correct, Your Honor. The punch list isn't. Is there any significance to these 13 items in the punch list, as Mr. Draper said, not much, if any? No, he's correct. Okay. He's correct. So what is the Certificate of Substantial Completion, and you heard Mr. Draper's assessment of it, in comparison to a Certificate of Final Completion? Is that how that works? Yes, it does. That's right. And Mr. Draper attaches great significance to the Certificate of Substantial Completion. Is he wrong, and if so, why? Yes, he is wrong. What the Certificate of Substantial Completion did was say, your work, your fireproofing work, is pretty much done. Here's the only minor things, and I think they were all minor things, that need to be done to complete it. I think what Valentin is doing in this case, and they're conflating satisfaction with the work with approving payment of the contract. Well, he's explicit, I think, in response to my question, if I understood him correctly. He's saying your Certificate of Substantial Completion is saying, hey, we've done the fireproofing work, okay, you've done that, essentially constitutes an abandonment of any claims for ancillary damage caused by their people in the process. No, we just don't see it that way at all. Well, he's heard the basis of his claim. There's some clause or something in the contract. What about that? No, I don't think there would be any clause in the contract that would indicate it would be an abandonment. And we, about six weeks after this incident happened, we sent Valentin and the insurance company a letter advising them we were pursuing a claim for damage, and we've continuously maintained that claim. So you didn't sneak up on them? No, we did not sneak up on them a bit, Your Honor. We've persisted in that claim and do to this day. Counsel argues that the comptroller has an offset procedure. Is that correct? That's absolutely correct. Why wouldn't the state proceed in that fashion then? It's not. You could submit the voucher, as I understand it, to the comptroller, and then both parties can argue on whether there's water damage and who Because that procedure really is much better suited for situations, and I think counsel even touched on this, where the claim has been adjudicated or where the liability is very clear. The comptroller doesn't hold adjudicatory hearings, which is pretty much what would be necessary here to. So the comptroller's offset deals with matters which are really not in That's what is much better suited for. Now, the provision, the contract does say we can resort to that. He is correct in saying that. But, again, it also says right above that provision it says the state can withhold payment if contract terms have not been met. So as a bottom line, let me see if I can sort this out. It's the state's position that there's this dispute based upon the damage Valentin's employee did, the water damage. And you're saying this is a dispute which is capable of being resolved in the court of claims to see to what extent that negligence causes this, that should be an offset against what you should pay them. And the court of claims is capable of doing that. And then any judgment they get would be paid. Yes, that would be. As opposed to their claim that mandamus requires, based upon the certificate of substantial completion, that the payment order or whatever it is be submitted to the controller for claim for damages against Valentin in the circuit court? Is that his position as you understand it? That's how I understand it, Your Honor, yes. And there's no offset and let Beacon defend him and so forth? Right. He claims that the Beacon Insurance, I guess despite the letter you receive, would have to defend him. Would the insurance company be capable of appearing in the court of claims and having this matter adjudicated there? As counsel or as providing counsel or just providing a defense in the court of claims? Your Honor, what type of act? I'm a little unclear and I'm sorry.  I guess they're going to have to make some factual findings. The state claims their guy caused this hundreds of thousands of dollars worth of damage. Maybe they claim, no, that's not true. Prove it. Could the court of claims adjudicate that? I would. Yes. Yes, I believe they could adjudicate that. Okay, so I suppose it's not the circuit court, but is there any reason why the volunteer can't get its day in court in the court of claims and have all these matters resolved? There's no reason. Well, let me answer this. It seems to me CDB goes to great lengths to make darn sure this goes to the court of claims and Voluntine's going to great lengths to make sure it doesn't go to the court of claims. What am I supposed to read into that? Why is that? That concerns me. You may not be able to answer it. They're trying to avoid the court of claims. Your position is that's where we want this litigated. Well, I think the state is disbelieving. It looks like both sides think the court of claims might be a little biased towards the state's position. That's the way it looks to me sitting up here hearing all these arguments. The state may well believe that it would be a more favorable forum for it, but also the state does believe that the legislature intended that sovereign immunity be asserted where applicable, and the state does believe it's applicable here. But I can't deny that there may be something to your suspicion, too, in all candor. Counsel, what is the language in the contract regarding the insurance with Pekin? Because you've stated it's one thing and counsel's stated it's another, and I want to be sure exactly what that language is. I don't think, I'm not sure that the clause is in the record. I think in pages 4 and 5, or 4 or 5 of their complaint, they allege what the clause says, and I believe that their allegation reads that the state has waived damages to the extent that they are covered by the policy of insurance. I can't say that's exact, but I believe it's close. And with respect to the certificate of substantial completion, with that certificate, is that a place where you would normally note, well, we have a problem because damage was caused? I mean, there was no notation like that, but is that something that would normally be noted on that? No, it would more, it's geared more toward what needs, what work needs to be done, really. And again, the problem the state has isn't with the fireproofing work. It's with the damage that we think their employee did, and they disagree. So, given the language regarding the insurance with Pekin, what does that mean? What's the purpose of that if it's not a waiver? I think the purpose of it is to avoid a situation where the state would be getting the insurance money and possibly have a double recovery and try to recover against Valentin as well. Because the contract requires that the state be named as an additional insured. So, I think it's avoiding a situation where the state, Pekin Insurance would say, yes, you're covered, here's your check. And the state, nonetheless, goes after Valentin for negligence or tries to still offset. I think that's what that provision is geared toward. So, it doesn't work to free the construction company of the obligation to pay you directly for the damage? No, it doesn't. Not in the light of that clause that says that Valentin is responsible for damage to the site. And again, I think under their interpretation of the contract, that clause is rendered pretty much meaningless in cases like this because the state would always be compelled to go after the insurance company. Well, if they didn't have that language, they wouldn't be compelled to do that, right? The language requiring them to have the insurance? Well, no, that is correct, Your Honor. Again, I think if you read those two clauses together, the idea is to prevent any prospect of a double recovery for the state. And the state would be considered responsible if they secure, I'm sorry, the construction company would be considered responsible if they secure insurance that's going to take care of that damage, right? I mean, is there really an inconsistency there? Well, I don't think so. Well, I think the idea is, in this case, I don't think there's an inconsistency if the insurance company actually does take care of it. No, then we couldn't go after Valentin. But is that what's required by the agreement? Does the agreement say that they have to secure insurance, as counsel was saying, they don't have to secure insurance that says no matter what, we'll pay? I mean, that seems to be what you're advocating, that since they don't have that. No, no, not no matter what, but they would have to pay if there is liability. I mean, if Valentin really should be held liable, yes, then they would have to pay. Okay. I'm out of time. Mr. Smith, we are out of time. Thank you, Your Honor. And Mr. Draper, do you have any rebuttal? I do. The state's brief at the very first page stated that the nature of this case involves a dispute, and they said the bottom line is this, that the state's payment has been withheld because Valentin, and I'm abbreviating the statement but quoting from it, caused a water leak due to damage to a water. The whole basis is that CDB claims there's a water leak, which CDB has never tendered any evidence to prove, and they claim they don't have to make payments simply because they wrote a letter making a claim and they weren't instantly given $500,000. Why don't you go into the Court of Claims and get it resolved? We can't go to the Court of Claims and get it resolved. Both parties in their contract waived any right to this kind of claim. At page 8 of our brief, we quoted the standard construction contracts with Your Honor's question about the waiver of damages. At the bottom of page 8 of our brief, CDB, the using agency, the architect engineer, and each contractor, including Valentin, waive all rights against each other. It's a mutual obligation for damages caused by fire or any other peril to the extent of any loss or claim that is covered by builder's risk insurance or other valid insurance for the project. That was there. Both parties have waived any claim for this kind of peril. Why haven't you gone into the Court of Claims to seek to enforce your contract? We haven't gone to the Court of Claims because the Court of Claims can't compel CDB to issue the voucher, which is what we need to do. If the Court of Claims issues a judgment, do you have any reason to think that it won't be paid? I have very serious concerns that it won't be paid. And those concerns... Do you dispute Mr. Schmidt's representations that there is not much history of Court of Claims judgments not being paid? The history I know from when I was in the Governor's office is the Court of Claims issued a very substantial, multimillion-dollar judgment in favor of a Chicago construction company. Despite the Court of Claims judgment, it ended up in the state budget, and the Governor took and prepared a line-item veto and vetoed out that judgment, and it was not paid. When was that? When was that? That would have been back in 1986. There have been lots of judgments since. I haven't been privy to all of those actions or researched that question. Here's the thing about this. It seems to me that when you contract with the CDB, you have history to believe that disputes with the state are to be resolved in the Court of Claims, contractual disputes. I disagree. Let me finish, Counselor. And furthermore, it seems to me that if you're a construction company and you contract with the CDB and you don't want your claims to be resolved by the Court of Claims, then don't contract with the State of Illinois. I think that what the law is is that contractors are allowed to rely on this statutory law because, while Counsel said that CDB has discretion, just discretion not to submit vouchers, that's not the law. The law is that public officials have to comply with the law, and if there is no requirement that they comply with the law that's enforceable in the circuit court, then CDB just takes $500,000 of construction, makes an unsubstantiated assertion that you caused damage, and never pays for it. If we go to the Court of Claims, what is happening here is an attempt to force Valentine now to prove a negative and to go to court and assume CDB's burden. CDB would have a burden of proving... Can the Court of Claims resolve the issue of the claim negligence that CDB maintains of Valentine in this case? Well, again, that negligence was waived, so it's not a contractual claim. Let's assume for the moment it wasn't waived. Mr. Schmidt says it wasn't. Can CDB resolve all that? I still don't believe so. It can't issue a declaratory judgment ruling about liability. It doesn't have that power. It historically has always claimed it only has the power to determine issues like contractual... In this context, it would be a contractual claim. This negligence claim is not a contractual claim. It's an independent claim, even in the circuit court. They would be very different pleadings. They would be concluded with two separate judgments. The offset would only be at the collection stage, which can happen with the comptroller. It could happen by CDB. If it really believes this, go to court and file a suit. So the offset would be, we envision, having a trial where we're going to decide negligence issues? The offset procedure requires a hearing be held or a trial be held in court, and then the judgment is enforced. And CDB's had three years now, four years from first making some of the assertions, but three full years in which to do that and simply haven't. They've just taken this without payment and without remedy. The Prompt Payment Act is part of the construction contract. Contractors should have the right to rely on enforcement of the law and public officials following it. That's what this action seeks. Okay. Thanks to both of you. Outstanding arguments on both sides. If you have any questions, the case is submitted and the court stands in recess.